**VOLUNTARY RESOLUTION AGREEMENT BETWEEN
THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
OFFICE FOR CIVIL RIGHTS
AND
MAINE DEPARTMENT OF EDUCATION
OCR No. DO-25-610531-RV-CRR**

## I. Parties to Agreement

1. The Parties to this Voluntary Resolution Agreement ("Agreement") are:

   a. The U.S. Department of Health and Human Services ("HHS"), Office for Civil Rights ("OCR"), pursuant to its jurisdictional authority under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, and its implementing regulation, 45 C.F.R. Part 86.

   b. The Maine Department of Education ("MDOE"), the state agency responsible for administering Maine's education programs and activities.

## II. Background

2. This matter was initiated based upon reports that the Maine Principals' Association ("MPA"), which governs school sports in the state for primary and secondary education, continues to allow male athletes to compete in women's sports in violation of Title IX and President Trump's Executive Order ("EO") 14201, "Keeping Men Out of Women's Sports," signed on February 5, 2025.

3. Maine public schools, under the MDOE, follow the rules of the MPA for youth sports, which are reflective of current statewide standards.

4. In 2024, the MPA approved a policy allowing male athletes to compete against female athletes, meaning sports reserved for exclusively female youth (not sports for both male and female youth).

5. As a result of these allegations, OCR initiated an investigation of MDOE's compliance with Title IX.

6. On February 25, 2025, OCR sent MDOE a Notice of Violation. This Agreement outlines the actions that MDOE needs to take to come into compliance with Title IX.

7. The Parties have agreed that this matter can be resolved promptly through the terms of this Agreement and without further burden of additional investigation, enforcement proceedings, or litigation.

8. The Parties have therefore voluntarily entered into this Agreement.

9. MDOE agrees to the terms stipulated in this Agreement and affirms that it fully intends to comply with its obligations to comply with all applicable provisions of Title IX.

### III. Jurisdiction

10. OCR has the authority to conduct investigations of complaints and compliance reviews to determine whether recipients of HHS funding operate their education programs and activities in compliance with Title IX and, where appropriate, negotiate and securing voluntary compliance agreements. 45 C.F.R. § 86.11.

11. MDOE is a recipient of Federal financial assistance (FFA) from HHS through the Administration for Community Living totaling $516,131, from the Centers for Disease Control totaling $99,940, and from the Administration for Children and Families totaling $87,015.[1]

### IV. Definitions

For purposes of this Agreement, the terms listed below shall have the following meaning:

12. The term "MDOE" means all employees, agents, contractors, and volunteers working for or on behalf of MDOE who have or are reasonably likely to have direct contact with participants.

13. The term "Duration of this Agreement" means the period of time this Agreement remains in effect.

14. The term "Effective Date of this Agreement" means the date the Agreement is signed by all Parties.

15. The term "sex," as used in Title IX and in this Agreement, is defined as follows (consistent with EO 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," issued on January 20, 2025):

    (a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity."

    (b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively.

    (c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively.

    (d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell.

---

[1] *See* https://taggs.hhs.gov/Detail/RecipDetail?arg_EntityId=ZyWSnnwwIUZ64ZvdbsJ6hw%3D%3D.

(e) "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell.

## V.  Actions to be Taken by MDOE

### A.  General Nondiscrimination Obligations

16. <u>Nondiscrimination</u>. MDOE agrees to comply with the requirements of Title IX and its implementing regulations. MDOE shall provide female athletes an equal opportunity to participate in, and enjoy the benefits of, participation in its education programs and activities, as required by this Agreement and Title IX.

17. <u>Retaliation and Coercion</u>. MDOE shall not retaliate against or coerce any person who made, or is making, a complaint; exercised, or is exercising, their rights under Title IX; or who has assisted or participated in the investigation of any matter covered by this Agreement.

### B.  Compliance with Title IX for Youth Sports in the State of Maine

18. <u>Prohibit Male Athletes from Competing Against Female Athletes in Primary and Secondary Education Youth Sports Programs and Activities</u>. Within ten (10) days of the Date of this Agreement, MDOE will work with MPA to rescind and reverse MPA's policy allowing male athletes to compete against female athletes in the female athlete category in primary and secondary education youth sports, meaning sports reserved exclusively for female youth (not sports for both male and female youth). If the MPA does not rescind and reverse its policy, MDOE will prohibit public schools within the state of Maine from participating in events organized and administered by the MPA.

### C.  Finding of Violation

19. This Agreement confirms a finding by OCR that MDOE is in noncompliance with Title IX. This Agreement can be construed and deemed an admission of liability by MDOE regarding reports that MDOE engaged in wrongful or illegal activity in violation of Title IX in allowing the participation of male athletes in female youth sports in the state of Maine.

### D.  Return of FFA MDOE Received from HHS in FY2024-2025

20. Based upon the above background and findings, MDOE shall return FFA received from HHS for Fiscal Year 2024-2025 through the HHS Administration for Community Living totaling $516,131, from the Centers for Disease Control totaling $99,940, and from the Administration for Children and Families totaling $87,015, for a total of $703,086.

### E.  Training

21. Within ten (10) days of the Date of this Agreement, MDOE will draft and submit updated training, procedure and process materials to OCR for review and approval. The training

    materials will be used in training MDOE personnel and will cover:
  a. the requirements of this Agreement;
  b. relevant nondiscrimination requirements under applicable Federal laws;
  c. obligations to ensure equal opportunity to female athletes under Title IX to participate in MDOE's education programs and activities;
  d. MDOE's policies and procedures;
  e. MDOE's grievance procedure; and
  f. the non-retaliation provisions of Title IX

    OCR will make its best effort to review the proposed training materials within thirty (30) calendar days of receipt. MDOE will revise its proposed training materials to reflect the comments or concerns identified by OCR.

22. <u>Timeframe for the Provision of Training.</u> To ensure compliance with this Agreement and the law as it relates to equal opportunity, MDOE agrees to conduct trainings for MDOE personnel within the timeframes specified in this Agreement. MDOE shall maintain copies of the training materials and attendance records for each training. Each training will be of sufficient duration and content to train MDOE personnel in the areas outlined in this Agreement relative to their responsibilities for coordinating or providing services, programs or activities.

    a. <u>Existing MDOE Personnel</u>. Within thirty (30) days of OCR approval of the training materials, and on an annual basis thereafter, MDOE will provide to all MDOE personnel mandatory training including nondiscrimination requirements under Title IX; MDOE's Title IX nondiscrimination policies and procedures; MDOE's grievance procedure; and the documentation requirements of this Agreement.

    b. <u>New MDOE Personnel</u>. Within thirty (30) days of their start date, MDOE will provide to all new MDOE personnel mandatory training including nondiscrimination requirements under Title IX; MDOE's Title IX policies and procedures; MDOE's grievance procedure; and the documentation requirements of this Agreement.

## VI.   Reporting and Monitoring

23. <u>Notices to OCR</u>. Unless otherwise provided, all notices, reports or other such documents required by this Agreement shall be submitted electronically to OCR.

24. <u>Records</u>. MDOE shall maintain records to document the information required by this Agreement and shall make them available to OCR within ten (10) days of a written request throughout the Duration of this Agreement.

25. <u>Complaints</u>. For the Duration of this Agreement, MDOE shall notify OCR if any person files a lawsuit, written complaint, or formal charge against MDOE with a state or federal agency, alleging that MDOE discriminated against them on the basis of sex in violation of Title IX. Such notification must be provided in writing within ten (10) days of the date MDOE receives notice of the allegation and must include, at a minimum, the nature of the allegation, the name of the person making the allegation, the status of any complaint or

      how the matter is being handled, and its ultimate disposition. MDOE will reference this provision of the Agreement in the notification to OCR.

26. <u>Compliance Report</u>. MDOE shall provide a written report ("Compliance Report") to OCR regarding the status of its compliance with this Agreement ten (10) days prior to end of the Duration of the Agreement.

27. <u>Required Content for Compliance Report</u>. The Compliance Report shall include appropriate documentation of the steps MDOE has taken to comply with each term of this Agreement, including:
    a. any revised policies and procedures;
    b. the distribution of policies and procedures;
    c. the training required by this Agreement, including training materials and attendance records; and
    d. the list of any grievances and/or complaints filed by participants or those acting on their behalf regarding allegations of discrimination on the basis of sex, including a description of the allegations, the date filed, the status and/or outcome of each grievance or complaint, and a copy of the grievance itself.

## VII. <u>Enforcement and Miscellaneous Provisions</u>

28. <u>Duration of this Agreement</u>. This Agreement will be in effect for four (4) years from the Effective Date, provided that OCR determines that MDOE demonstrated compliance with this Agreement, at which point OCR's review and monitoring of this Agreement will terminate.

29. <u>Compliance Review</u>. HHS may review compliance with this Agreement at any time throughout the Duration of this Agreement. If OCR determines that MDOE has failed to substantially comply with any provision of this Agreement, the Parties will confer and attempt to reach agreement as to what steps may be necessary to resolve the compliance issues to both Parties' satisfaction. If an agreement is not reached, OCR may terminate this Agreement within thirty (30) calendar days' prior written notice to MDOE and take appropriate measures to effectuate MDOE's compliance with Title IX. Such measures may include OCR reopening its investigation of MDOE's compliance with Title IX, including with respect to OCR Transaction Number DO-25-610531-RV-CRR. OCR may incorporate into its reopened investigation any relevant evidence of noncompliance with the Agreement and any relevant evidence obtained by OCR prior to signing of the Agreement. OCR may also exercise all rights available under Title IX, including, but not limited to issuing noncompliance findings and the initiation of enforcement proceedings to terminate FFA to MDOE.

30. The Parties will not, individually or in combination with one another, seek to have any court declare or determine that any portion of this Agreement is invalid, illegal, or unenforceable. In the event that a court of competent jurisdiction determines that any provision of this Agreement is unenforceable, such provision shall be severed from the Agreement and all other provisions shall remain valid and enforceable; provided, however, that if the severance of any such provision materially alters the rights or obligation of the Parties, they shall, through reasonable, good faith negotiations, agree upon such other

      amendments as may be necessary to restore the Parties as closely as possible to the relative rights and obligation initially intended to them within the Agreement.

31. In consideration of the terms of this Agreement, OCR agrees to refrain from undertaking further investigation in OCR Transaction Number DO-25-610531-RV-CRR against MDOE based on the reports lodged against MDOE, except as provided herein. Except as related to the above-mentioned complaint, nothing contained in this Agreement is intended or shall be construed as a waiver by OCR of any right to institute proceedings against MDOE for violations of any statutes, regulations, or rules administered by OCR or to prevent or limit the investigative or enforcement authority of OCR with respect to any other discrimination complaints or compliance reviews under Title IX.

32. This Agreement is not intended to remedy any other potential violations of Title IX, or any other law that is not specifically addressed in this Agreement. Nothing in this Agreement relieves MDOE of its continuing obligations to comply fully with the requirements of Title IX.

33. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties on the matters raised herein, and no prior or contemporaneous statement, promise, or agreement, either written or oral, made by either party or agents of either party, that is not contained in this written agreement is enforceable. This Agreement can only be modified by mutual written agreement of the Parties. This Agreement is limited to the facts set forth herein and does not purport to remedy any other potential violations of Title IX or any other federal law.

34. <u>Binding</u>. This Agreement is final and binding on the parties, including all principals, agents, executors, administrators, representatives, successors in interest, beneficiaries, assigns, heirs, and legal representatives thereof. Each party has a duty to so inform any such successor in interest.

35. <u>Signatories</u>. The signatories represent that they have the authority to bind the respective parties identified below to the terms of this Agreement.

36. <u>Non-Waiver</u>. Failure by any party to seek enforcement of this Agreement pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or provisions.

37. <u>Execution</u>. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement. Electronically transmitted signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

38. <u>Publication or Disclosure of Agreement</u>. HHS places no restriction on the publication of the Agreement. In addition, HHS may be required to disclose material related to this Agreement to any person upon request, consistent with the requirements of the Freedom of Information Act, 5 U.S.C. § 522, and its implementing regulation, 45 C.F.R. Part 5.

AGREED BY THE PARTIES:

MAINE DEPARTMENT OF EDUCATION:

_____  _____
Name:                                                                    Date
Title:

FOR THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES:

_____  _____
Anthony F. Archeval                                              Date
Acting Director
Office for Civil Rights