

**AARON M. FREY**
ATTORNEY GENERAL

TEL: (207) 626-8800
TTY USERS CALL MAINE RELAY 71

STATE OF MAINE
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA, MAINE 04333-0006

REGIONAL OFFICES
84 HARLOW ST. 2ND FLOOR
BANGOR, MAINE 04401
TEL: (207) 941-3070
FAX: (207) 941-3075

125 PRESUMPSCOT ST., STE. 26
PORTLAND, MAINE 04103
TEL: (207) 822-0260
FAX: (207) 822-0259

14 ACCESS HIGHWAY, STE. 1
CARIBOU, MAINE 04736
TEL: (207) 496-3792
FAX: (207) 496-3291

March 4, 2025

W. Daniel Shieh
Associate Deputy Director
United States Department of Health and Human Services
Office for Civil Rights
Policy Division
200 Independence Ave. S.W.
Washington, D.C. 20201
Daniel.Shieh@hhs.gov

Re:   OCR Transaction No. DO-25-610531-RV-CRR

Associate Deputy Director Shieh:

As you know, the Office for Civil Rights (OCR) of the United States Department of Health and Human Services (HHS) recently has sent several communications to the Office of the Maine Attorney General (Maine OAG) regarding the Maine Department of Education (MDOE) and the Maine Principals' Association (MPA).

On Friday, February 21, 2025, OCR sent a letter[1] purporting to "initiat[e] a compliance review" and "investigation" of MDOE with respect to Title IX of the Education Amendments of 1972 (Title IX) based on reported conduct of MPA. The letter stated: "The scope of this compliance review will determine whether MDOE denied the benefits of, or otherwise subjected female students in the State of Maine to discrimination on the basis of sex under Title IX." The February 21 letter did not specify how OCR planned to conduct its "compliance review" of MDOE, nor did it identify any policy, practice, or regulation governing OCR "compliance reviews" of entities receiving federal financial assistance (FFA) from HHS. The February 21 letter also did not specify a timeline for OCR's review or request any information from the Maine OAG or MDOE. The letter did, however, note OCR's right of access to collect information from MDOE to determine MDOE's compliance status. *See, e.g.*, 45 C.F.R. § 80.6(c) (2024).

---

[1] The letter was emailed to the Maine OAG on or about 9:16 p.m. on February 21, 2025.

March 4, 2025
Page 2

On Tuesday, February 25, 2025, OCR sent a second letter[2] that noticed a violation of Title IX against MDOE based on 7 findings of fact. None of those findings pertain to the policies, procedures, or actions of MDOE.[3] Nevertheless, OCR's February 25 letter claims that MDOE has violated Title IX "[b]ased on the MPA's" alleged "policy of allowing male athletes to compete against female athletes." Although the February 25 letter does not state whether OCR has completed its investigation, it purports to constitute "official notice of MDOE's failure to comply with Title IX" as required by 45 C.F.R. § 80.8(d) (2024).

The February 25 letter asked MDOE to advise of any inaccuracies in the amount of FFA it received from HHS. There is a significant inaccuracy: MDOE did not receive $516,131 in FFA from the Administration for Community Living (ACL) in 2024. The funding in question was the Assistive Technology grant, which is now being administered by the University of Maine Augusta. ACL approved the change by letter dated March 11, 2024, a copy of which is attached to this letter.

On Thursday, February 27, 2025, OCR sent MDOE a proposed voluntary resolution agreement to "resolve" the alleged violation of Title IX noticed in OCR's February 25 letter. That proposal would require MDOE to

> "work with MPA to rescind and reverse MPA's" alleged "policy allowing male athletes to compete against female athletes in the female athlete category in primary and secondary education youth sports, meaning sports reserved exclusively for female youth (not sports for both male and female youth). If the MPA does not rescind and reverse its policy, MDOE will prohibit public schools within the state of Maine from participating in events organized and administered by the MPA."

The proposal also would require MDOE not only to admit that "MDOE engaged in wrongful or illegal activity in violation of Title IX in allowing participation of male athletes in female youth sports in the [S]tate of Maine," but also to "return FFA from HHS for Fiscal Year 2024-25."

The accelerated process described above appears to be at odds with HHS regulations. For example, 45 C.F.R. § 80.6(a) requires HHS "to the fullest extent practicable seek the cooperation of recipients in obtaining compliance with this part and shall provide assistance and guidance to recipients to help them comply voluntarily with this part." Despite emphasizing MDOE's obligation to comply with requests for information or access to records in its February 21 letter, no one from OCR contacted MDOE or the Maine OAG for further information or to discuss cooperation or compliance between February 21 and today.

Further, although the February 25 letter purports to constitute "official notice of MDOE's failure to comply with Title IX" as required by 45 C.F.R. § 80.8(d), it does not appear to meet all

---

[2] The letter was emailed to the Maine OAG on or about 8:12 p.m. on February 25, 2025.
[3] Each finding appears to be based solely upon publicly available information. The letter cites the website of the MPA, the text of section 4601 of the Maine Human Rights Act, and several online news articles.

March 4, 2025
Page 3

the requirements of that provision. In addition, because no one from OCR has been in contact with MDOE or the Maine OAG, it does not appear that HHS or OCR has made the required "additional efforts" "to persuade the recipient or other person to comply with the regulation and to take such corrective action as may be appropriate" since sending the February 25 letter.

Finally, MDOE does not agree that it is in violation of Title IX, nor does it agree that OCR has laid out a sufficient factual or legal basis for such a determination. The Maine Legislature has authorized MDOE to "[s]upervise, guide and plan for a coordinated system of public education for all citizens of the State"; "[i]nterrelate public education with other social, economic, physical and governmental activities, programs and services"; and "[e]ncourage and stimulate public interest in the advancement of education." 20-A. M.R.S.A. § 201 (2008). MPA, on the other hand, is a private, educational, nonprofit corporation neither created nor operated nor overseen by the State of Maine or MDOE. MPA operates according to its own policies and by-laws. MDOE is not a member of MPA. MDOE is not responsible for interscholastic youth sports or athletic programs in the State of Maine. MDOE does not offer, operate, or sponsor interscholastic, intercollegiate, club or intramural athletics in the State of Maine.

Undersigned counsel is available to speak with you or your team regarding your recent correspondence. Going forward, please contact undersigned counsel with respect to this matter with the contact information provided.

Regards,

*/s/ Sarah A. Forster*
Sarah A. Forster
Assistant Attorney General
sarah.forster@maine.gov

*/s/ Kimberly L. Patwardhan*
Kimberly L. Patwardhan
Assistant Attorney General
kimberly.patwardhan@maine.gov

KLP/lsf
Enclosure
cc:    Pender Makin, Commissioner of MDOE