**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Office for Civil Rights**

Headquarters ● Humphrey Building
200 Independence Ave, S.W.● Washington, D.C. 20201
Voice: (800) 368-1019 ● TDD: (800) 537-7697
Fax: (202) 619-3818 ● www.hhs.gov/ocr

---

March 5, 2025

State of Maine
Office of Governor Janet T. Mills
1 State House Station
Augusta, ME 04333

Office of the Attorney General
6 State House Station
Augusta, ME 04333
sarah.forster@maine.gov
kimberly.patwardhan@maine.gov

Kimberley Liscomb
MPA President
60 Pierce Drive
Augusta, ME  04330
kimberly.silsby@augustaschools.org

Pender Makin
Commissioner
Maine DOE
23 State House Station
Augusta, ME 04333

Michael R. Burnham
Executive Director
MPA Interscholastic Division
mburnham@mpa.cc

Karl Francis
Principal
Greely High School
303 Main St.
Cumberland, ME 04021

Re: Amended Notice of Compliance Review (OCR Transaction Number: DO-25-610531-RV-CRR State of Maine)

Dear Counsel:

On February 21, 2025, the U.S. Department of Health and Human Services' (HHS) Office for Civil Rights (OCR) initiated a compliance review of the Maine Department of Education (MDOE) based upon reports that the Maine Principal's Association (MPA), which governs high school sports in the state, will continue to allow male athletes to compete in female sports (i.e., sports where male and female athletes compete separately) in violation of President Trump's Executive Order (EO) 14201, "Keeping Men Out of Women's Sports," signed on February 5, 202,5 under Title IX of the Education Amendments of 1972.[1] These reports were further confirmed by a statement issued by the Governor's office on February 21, 2025.

We are in receipt of the State of Maine's response to our correspondence of February 21, 25, and 27, 2025. We write now to amend our February 21, 2025, Notice of Compliance Review to add MPA and Greely High School to the investigation. The MPA Division of Interscholastic Activities

---

[1] 20 U.S.C. §1681 *et seq*., as implemented by HHS at 45 C.F.R. Part 86.

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

is responsible for organizing and conducting interscholastic athletic activities for all public and some private high schools throughout Maine. In May 2024, MPA updated its Handbook to include a new Gender Identity Participation Policy that permits student athletes to participate in MPA sponsored interscholastic athletics as the gender that they identify with, rather than their birth sex.

Greely High School is a public high school that is a member of the MPA Division of Interscholastic Athletics and competes against other public and private high schools under the Interscholastic Division Bylaws, including the Gender Identity Participation Policy, created and enforced by MPA. On February 17, 2025, a male student athlete competed for Greely High School in the girls' pole vault event at the Class B state indoor championship meet. The student athlete won the girls' pole vault event.

OCR enforces Title IX, which prohibits discrimination on the basis of sex in any educational program or activity that receives Federal financial assistance. OCR ensures compliance through enforcement activities and periodic reviews of HHS-funded institutions such as MDOE. MDOE receives millions of dollars of taxpayer money. It may not accept that funding if it is in violation of the federal civil rights laws.

As a recipient of Federal financial assistance, MDOE is obligated to comply with Title IX, which means Federally funded educational institutions cannot deny women and girls an equal opportunity to participate in sports. Although Maine claims "MDOE is not responsible for interscholastic youth sports or athletic programs in Maine," it distributes funds for staff salaries, school facilities, and transportation, which in turn support athletics and interscholastic competition. The fact that MDOE has ceded control over its activities to MPA does not limit its obligations under Title IX.

MPA must also comply with Title IX. Although MPA is a private nonprofit organization, its authority to promote, organize, and regulate interscholastic activities in the state of Maine on behalf of MDOE[2] requires it to comply with Title IX. MDOE has ceded control of high school interscholastic sports competition to MPA, which assumes control of "all interscholastic tournaments, meets or other forms of competition" for its members, including all public high schools. By assuming control over interscholastic competition, MPA is subject to Title IX in the same way MDOE would be. *See A.B. v. Haw. State Dep't of Educ.,* 386 F. Supp. 3d 1352, 1357-58 (D. Haw. 2019) (finding high school athletic association had controlling authority over many aspects of the DOE's interscholastic athletic programs and was subject to Title IX, independent of funding source); *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007) ("[I]f we allowed funding recipients to cede control over their programs to indirect funding recipients but did not hold indirect funding recipients liable for Title IX violations, we would allow funding recipients to ... avoid Title IX liability"); *Horner v. Ky. High Sch. Athletic Ass'n,* 43 F.3d 265, 271-72 (6th Cir. 1994) (because Kentucky's state laws conferred authority to the Kentucky State Board of Education and Kentucky High School Athletic Association to control certain activities for the federally funded Kentucky Department of Education, both entities were subject to Title IX); *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 80 F. Supp. 2d 729, 735 (W.D. Mich. 2000) (holding that an athletic association that "does not receive any direct assistance from the federal government," and "receives the bulk of its funding from gate receipts

---

[2] MPA Information – Maine Principal's Association (MPA) (ME)

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

generated at MHSAA-sponsored tournaments" was still covered under Title IX, reasoning that "any entity that exercises controlling authority over a federally funded program is subject to Title IX, regardless of whether that entity is itself a recipient of federal aid"). Finally, upon information and belief, Greely High School is a subrecipient of HHS Federal financial assistance through MDOE, and therefore must also comply with Title IX.

OCR has authority to conduct periodic compliance reviews of recipients' practices to determine whether they are complying with Title IX. 45 C.F.R. § 80.7(a) (incorporated by reference at 45 C.F.R. § 86.71).

As stated in section 1 of EO 14201, under Title IX, "educational institutions receiving Federal funds cannot deny women an equal opportunity to participate in sports. As some Federal courts have recognized, 'ignoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities.' *Tennessee v. Cardona*, 24-cv-00072 at 73 (E.D. Ky. 2024). *See also Kansas v. U.S. Dept. of Education*, 24-cv-04041 at 23 (D. Kan. 2024) (highlighting 'Congress' goals of protecting biological women in education')."

It is no answer for MDOE, MPA, and Greely to assert that EO 14201 conflicts with state law, as Federal laws preempt conflicting state laws. *See* U.S. Const. art. 6, cl. 2.

Please be advised that federal regulations prohibit covered entities from harassing, intimidating, or retaliating against individuals who participate in OCR investigations or compliance reviews. Any such action may constitute a violation of 45 C.F.R. § 80.7(e) (incorporated by reference at 45 C.F.R. § 86.71). We request that you take all necessary steps to assure compliance with this prohibition.

If you have questions, you may contact Daniel Shieh, Associate Deputy Director, at Daniel.Shieh@hhs.gov.

Sincerely,

Anthony F. Archeval
Acting Director
HHS, Office for Civil Rights