# VOLUNTARY RESOLUTION AGREEMENT BETWEEN
# THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
# OFFICE FOR CIVIL RIGHTS
# AND
# MAINE DEPARTMENT OF EDUCATION
# MAINE PRINCIPAL'S ASSOCIATION
# GREELY HIGH SCHOOL/MSAD #51.
# OCR NO. DO-25-610531-RV-CRR

## I.     Parties to Agreement

1. The Parties to this Voluntary Resolution Agreement ("Agreement") are:

   a. The U.S. Department of Health and Human Services ("HHS"), Office for Civil Rights ("OCR"), pursuant to its jurisdictional authority under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, and its implementing regulation, 45 C.F.R. Part 86.

   b. The Maine Department of Education ("MDOE"), the state agency responsible for administering Maine's education programs and activities.

   c. The Maine Principals' Association ("MPA"), the governing body for youth sports in the state of Maine that is responsible for organizing and conducting interscholastic athletic activities for all public and some private high schools throughout Maine.

   d. Greely High School ("Greely"), a public high school in the state of Maine and a member school of Maine School Administrative District #51.

## II.     Background

2. This matter was initiated based upon reports that the MPA, which governs school sports in the state of Maine for Secondary Education, continues to allow male athletes to compete in female-only sports in violation of Title IX and President Trump's Executive Order ("EO") 14201, "Keeping Men Out of Women's Sports," signed on February 5, 2025.

3. It was further reported that on February 17, 2025, Greely fielded a team with a male athlete to compete in the female-only division at the 2025 Class B State Meet for track and field, denying other female athletes an equal opportunity to participate and obtain the benefits of participation in that competition.

4. As a result of these allegations, on February 21, 2025, OCR initiated an investigation of MDOE's compliance with Title IX.

5. On February 25, 2025, OCR sent MDOE a Notice of Violation, and, on February 27, 2025, a proposed Voluntary Resolution Agreement (VRA).

6. On March 5, 2025, OCR expanded the scope of its Title IX investigation to include MPA and Greely.

7. On March 12, 2025, representatives from OCR, MDOE, MPA, and Greely met, and concluded that MDOE would not sign or provide a counteroffer to the proposed VRA.

8. On March 17, 2025, OCR sent MDOE, MPA, and Greely an Amended Notice of Violation. OCR's findings of fact, jurisdictional and legal analysis, and violation determinations are set forth in that March 17, 2025 Amended Notice of Violation.

9. This Agreement outlines the actions that MDOE, MPA, and Greely must take to come into compliance with Title IX.

10. The Parties have agreed that this matter can be resolved promptly through the terms of this Agreement and without further burden of additional investigation, enforcement proceedings, or litigation.

11. The Parties have therefore voluntarily entered into this Agreement.

12. The Parties agree to the terms stipulated in this Agreement, and MDOE, MPA, and Greely affirm that they fully intend to comply with their obligations to comply with all applicable provisions of Title IX.

### III. Jurisdiction

13. OCR has the authority to conduct investigations of complaints and compliance reviews to determine whether recipients of HHS funding operate their education programs and activities in compliance with Title IX and, where appropriate, negotiate and secure voluntary compliance agreements. 45 C.F.R. § 86.71 (cross-referencing 45 C.F.R. § 80.7).

14. MDOE is a recipient of Federal financial assistance from HHS through the Centers for Disease Control totaling $99,940, and from the Administration for Children and Families totaling $87,015.[1] MDOE is therefore subject to OCR's jurisdiction.

13. OCR exercises jurisdiction over MPA because MDOE has ceded its authority in the area of interscholastic athletic competition at the high school level to MPA, and because such competitions constitute examples of "physical and governmental activities, programs and services" that MDOE "interrelate[s] [with] public education." 20-A. M.R.S.A. § 201.

14. Greely receives Federal financial assistance from MDOE, as a public high school that falls under the jurisdiction of the MDOE. Greely is therefore subject to OCR's jurisdiction.

---

[1] *See* https://taggs.hhs.gov/Detail/RecipDetail?arg_EntityId=ZyWSnnwwIUZ64ZvdbsJ6hw%3D%3D.

## IV.  Definitions

For purposes of this Agreement, the terms listed below shall have the following meaning:

15. The term "MDOE" means all employees, agents, contractors, and volunteers working for or on behalf of MDOE who have or are reasonably likely to have direct contact with participants.

16. The term "MPA" means all employees, agents, contractors, and volunteers working for or on behalf of MPA who have or are reasonably likely to have direct contact with participants.

17. The term "Greely" means all employees, agents, contractors, and volunteers working for or on behalf of Greely who have or are reasonably likely to have direct contact with participants.

18. The term "Duration of this Agreement" means the period of time this Agreement remains in effect.

19. The term "Effective Date of this Agreement" means the date the Agreement is signed by all Parties.

20. The term "sex," as used in Title IX and in this Agreement, is defined as follows (consistent with EO 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," issued on January 20, 2025):

    (a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity."

    (b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively.

    (c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively.

    (d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell.

    (e) "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell.

21. The term "Secondary Education" means high school grades nine to twelve or their equivalent in an educational setting.

### V. Actions to be Taken by MDOE, MPA, and Greely

#### A. General Nondiscrimination Obligations

22. Nondiscrimination. MDOE, MPA, and Greely agree to comply with the requirements of Title IX and its implementing regulations. MDOE, MPA, and Greely shall provide female athletes in Secondary Education in the state of Maine an equal opportunity to participate in, and enjoy the benefits of, participation in its education programs and activities, as required by this Agreement and Title IX.

23. Retaliation and Coercion. MDOE, MPA, and Greely shall not retaliate against or coerce any person who made, or is making, a complaint; exercised, or is exercising, their rights under Title IX; or who has assisted or participated in the investigation of any matter covered by this Agreement.

#### B. Compliance with Title IX for Youth Sports in the State of Maine

24. Prohibit Male Athletes from Competing Against Female Athletes in Secondary Education Youth Sports Programs and Activities. Within ten (10) days of the Date of this Agreement, MDOE will work with MPA to rescind and reverse MPA's policy allowing male athletes to compete against female athletes in the female athlete category in Secondary Education youth sports, meaning sports reserved exclusively for female youth (not sports for both male and female youth). Greely will only field teams as allowed under MPA policy, revised as required above. If the MPA does not rescind and reverse its policy, MDOE will prohibit public schools within the state of Maine from participating in events organized and administered by the MPA, and prohibit MPA from using public school facilities to host MPA-organized or affiliated events.

25. Preemption. MDOE, MPA, and Greely acknowledge that the obligation to comply with Title IX as set forth in this Agreement is not obviated or alleviated by any State or local law or athletic policy.

#### C. Finding of Violation

26. This Agreement confirms a finding by OCR that MDOE, MPA, and Greely are in noncompliance with Title IX. This Agreement can be construed and deemed an admission of liability by MDOE, MPA and Greely regarding reports that MDOE, MPA, and Greely engaged in wrongful or illegal activity in violation of Title IX in allowing the participation of male athletes in female-only high school sports in the state of Maine.

#### D. Return of Federal financial assistance MDOE Received from HHS in FY2024-2025

27. Based upon the above background and findings, MDOE shall return FFA received from HHS for Fiscal Year 2024-2025 from the Centers for Disease Control totaling $99,940 and from the Administration for Children and Families totaling $87,015.

### E. Training

28. Within ten (10) days of the Date of this Agreement, MDOE, MPA, and Greely will jointly draft and submit updated training, procedure and process materials to OCR for review and approval. The training materials will be used in training personnel and will cover:
    a. the requirements of this Agreement;
    b. relevant nondiscrimination requirements under applicable Federal laws;
    c. obligations to ensure equal opportunity to female athletes under Title IX to participate in education programs and activities;
    d. their policies and procedures;
    e. their grievance procedure; and
    f. the non-retaliation provisions of Title IX.

    OCR will make its best effort to review the proposed training materials within thirty (30) calendar days of receipt. MDOE, MPA, and Greely will revise their proposed training materials to reflect the comments or concerns identified by OCR.

29. <u>Timeframe for the Provision of Training.</u> To ensure compliance with this Agreement and the law as it relates to equal opportunity, MDOE, MPA, and Greely agree to conduct trainings for personnel within the timeframes specified in this Agreement. MDOE, MPA, and Greely shall maintain copies of the training materials and attendance records for each training. Each training will be of sufficient duration and content to train personnel in the areas outlined in this Agreement relative to their responsibilities for coordinating or providing services, programs, or activities.

    a. <u>Existing MDOE, MPA, and Greely Personnel</u>. Within thirty (30) days of OCR approval of the training materials, and on an annual basis thereafter, MDOE, MPA, and Greely will provide to all personnel mandatory training covering the training materials identified in paragraph 28, including nondiscrimination requirements under Title IX; their Title IX nondiscrimination policies and procedures; their grievance procedure; and the documentation requirements of this Agreement.

    b. <u>New MDOE, MPA, and Greely</u> <u>Personnel</u>. Within thirty (30) days of their start date, MDOE, MPA, and Greely will provide to all new MDOE, MPA, and Greely personnel mandatory training covering the training materials identified in paragraph 28, including nondiscrimination requirements under Title IX; their Title IX policies and procedures; their grievance procedure; and the documentation requirements of this Agreement.

### VI. Reporting and Monitoring

30. <u>Notices to OCR</u>. Unless otherwise provided, all notices, reports, or other such documents required by this Agreement shall be submitted electronically to OCR.

31. <u>Records</u>. MDOE, MPA, and Greely shall maintain records to document the information required by this Agreement and shall make them available to OCR within ten (10) days of a written request throughout the Duration of this Agreement.

32. <u>Complaints</u>. For the Duration of this Agreement, MDOE, MPA, and Greely shall notify OCR if any person files a lawsuit, written complaint, or formal charge alleging that they have been discriminated against on the basis of sex in violation of Title IX. Such notification must be provided in writing within ten (10) days of the date the Parties receives notice of the allegation and must include, at a minimum, the nature of the allegation, the name of the person making the allegation, the status of any complaint or how the matter is being handled, and its ultimate disposition. The Parties will reference this provision of the Agreement in the notification to OCR.

33. <u>Compliance Report</u>. MDOE, MPA, and Greely shall provide a written report ("Compliance Report") to OCR regarding the status of their compliance with this Agreement within thirty (30) days of the Parties signing and entering this Agreement and shall be submitted annually on the first day of August of each calendar year for the Duration of this Agreement.

34. <u>Required Content for Compliance Report</u>. The Compliance Report shall include appropriate documentation of the steps MDOE, MPA, and Greely have taken to comply with each term of this Agreement, including:
    a. any revised policies and procedures;
    b. the distribution of policies and procedures;
    c. the training required by this Agreement, including training materials and attendance records; and
    d. the list of any grievances and/or complaints filed by participants or those acting on their behalf regarding allegations of discrimination on the basis of sex, including a description of the allegations, the date filed, the status and/or outcome of each grievance or complaint, and a copy of the grievance itself.

## VII. **Enforcement and Miscellaneous Provisions**

35. <u>Duration of this Agreement</u>. This Agreement will be in effect for four (4) years from the Effective Date, provided that OCR determines that MDOE, MPA, and Greely demonstrated compliance with this Agreement, at which point OCR's review and monitoring of this Agreement will terminate.

36. <u>Compliance Review</u>. HHS may review compliance with this Agreement at any time throughout the Duration of this Agreement. If OCR determines that MDOE, MPA, or Greely has failed to substantially comply with any provision of this Agreement, the Parties will confer and attempt to reach agreement as to what steps may be necessary to resolve the compliance issues to the involved Parties' satisfaction. If an agreement is not reached, OCR may terminate this Agreement within thirty (30) calendar days' prior written notice to MDOE, MPA, and Greely and take appropriate measures to effectuate compliance with Title IX. Such measures may include OCR reopening its investigation of MDOE's, MPA's, and Greely's compliance with Title IX, including with respect to OCR Transaction Number DO-25-610531-RV-CRR. OCR may incorporate into its reopened investigation any relevant evidence of noncompliance with the Agreement and any relevant evidence obtained by OCR prior to signing of the Agreement. OCR may also exercise all rights

       available under Title IX, including, but not limited to issuing noncompliance findings and the initiation of enforcement proceedings to terminate FFA to MDOE, MPA, and Greely.

37. The Parties will not, individually or in combination with one another, seek to have any court declare or determine that any portion of this Agreement is invalid, illegal, or unenforceable. In the event that a court of competent jurisdiction determines that any provision of this Agreement is unenforceable, such provision shall be severed from the Agreement and all other provisions shall remain valid and enforceable; provided, however, that if the severance of any such provision materially alters the rights or obligation of the Parties, they shall, through reasonable, good faith negotiations, agree upon such other amendments as may be necessary to restore the Parties as closely as possible to the relative rights and obligation initially intended to them within the Agreement.

38. In consideration of the terms of this Agreement, OCR agrees to refrain from undertaking further investigation in OCR Transaction Number DO-25-610531-RV-CRR against MDOE, MPA, or Greely based on the reports lodged against MDOE, MPA and Greely except as provided herein. Except as related to the above-mentioned compliance review, nothing contained in this Agreement is intended or shall be construed as a waiver by OCR of any right to institute proceedings against MDOE, MPA, or Greely for violations of any statutes, regulations, or rules administered by OCR or to prevent or limit the investigative or enforcement authority of OCR with respect to any other discrimination complaints or compliance reviews under Title IX.

39. This Agreement does not preclude any federal agency outside of OCR from undertaking its own investigation and/or remediation of the matters as defined in paragraph 38.

40. This Agreement is not intended to remedy any other potential violations of Title IX, or any other law that is not specifically addressed in this Agreement. Nothing in this Agreement relieves MDOE, MPA, or Greely of their continuing obligations to comply fully with the requirements of Title IX.

41. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties on the matters raised herein, and no prior or contemporaneous statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Agreement is enforceable. This Agreement can only be modified by mutual written agreement of the Parties. This Agreement is limited to the facts set forth herein and does not purport to remedy any other potential violations of Title IX or any other federal law.

42. <u>Binding</u>. This Agreement is final and binding on the Parties, including all principals, agents, executors, administrators, representatives, successors in interest, beneficiaries, assigns, heirs, and legal representatives thereof. Each party has a duty to so inform any such successor in interest.

43. <u>Signatories</u>. The signatories represent that they have the authority to bind the respective Parties identified below to the terms of this Agreement.

44. <u>Non-Waiver</u>. Failure by any party to seek enforcement of this Agreement pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or provisions.

45. <u>Execution</u>. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement. Electronically transmitted signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

46. <u>Publication or Disclosure of Agreement</u>. HHS places no restriction on the publication of the Agreement. In addition, HHS may be required to disclose material related to this Agreement to any person upon request, consistent with the requirements of the Freedom of Information Act, 5 U.S.C. § 522, and its implementing regulation, 45 C.F.R. Part 5.

**AGREED BY THE PARTIES**

MAINE DEPARTMENT OF EDUCATION

_____     _____
Name:                                Date

MAINE PRINCIPAL'S ASSOCIATION

_____     _____
Name:                                Date

GREELY HIGH SCHOOL/MSAD #51

_____     _____
Name:                                Date

FOR THE UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES

_____     _____
Anthony F. Archeval                  Date
Acting Director
Office for Civil Rights