**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**Office for Civil Rights**

Headquarters • Humphrey Building
200 Independence Ave, S.W.• Washington, D.C. 20201
Voice: (800) 368-1019 • TDD: (800) 537-7697
Fax: (202) 619-3818 • www.hhs.gov/ocr

March 28, 2025

| | |
|---|---|
| State of Maine<br>Office of Governor Janet T. Mills<br>1 State House Station<br>Augusta, ME 04333 | Michael R. Burnham<br>Executive Director<br>MPA Interscholastic Division<br>mburnham@mpa.cc |
| Kimberly Patwardhan<br>Sarah Forster<br>Christopher C. Taub<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333<br>Kimberly.Patwardhan@maine.gov<br>Sarah.Forster@maine.gov<br>Christopher.C.Taub@maine.gov | Daniel W. Walker<br>Counsel for MPA<br>dwalker@preti.com<br><br>Melissa A. Hewey<br>Counsel for Greely High School/MSAD #51<br>303 Main St.<br>Cumberland, ME 04021<br>mhewey@dwmlaw.com |

Re: Notice of Referral (OCR Transaction Number: DO-25-610531-RV-CRR State of Maine)

Dear Counsel:

We write to inform you that the above-captioned matter is referred to the Department of Justice (DOJ) today pursuant to the authority delegated by the Secretary of the United States Department of Health and Human Services (HHS) to the Office for Civil Rights (OCR). This action is taken under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681 *et seq*., and HHS's implementing regulations for Title IX, 45 C.F.R. Part 86, which prohibit discrimination on the basis of sex in any education program or activity that receives Federal financial assistance.

This matter was initiated based upon reports that the Maine Principals' Association (MPA), which governs school sports in the state of Maine for Secondary Education, continues to allow male athletes to compete in female-only sports in violation of Title IX. It was further reported that on February 17, 2025, Greely fielded a team with a male athlete to compete in the female-only division at the 2025 Class B State Meet for track and field, denying other female athletes an equal opportunity to participate and obtain the benefits of participation in that competition.

45 C.F.R. § 86.41(a) provides: "No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis." "[W]hen Title IX is viewed in its entirety, it is abundantly clear that discrimination on the basis of sex means discrimination on the basis of being a male or female." *Tennessee v. Cardona*, __ F. Supp. 3d ___,

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

No. CV 2:24-072-DCR, 2025 WL 63795, at *3 (E.D. Ky. Jan. 9, 2025), as amended (Jan. 10, 2025) (issuing a vacatur of the [the Department of Education's Title IX Final Rule] (89 Fed. Reg. 33474 (Apr. 29, 2024)), *appeal docketed*, No. 25-5206 (6th Cir. Mar. 12, 2025). Title IX "applies to every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance." 45 C.F.R. § 86.11.

Below, we provide the findings of fact, jurisdiction and analysis that support OCR's March 17, 2025 Notice of Violation. Based on the events summarized, OCR has determined that compliance by the Maine Department of Education (MDOE), the Maine Principals' Association (MPA), and Greely High School/MSAD #51 (Greely) in this matter cannot be corrected through informal means. We therefore refer this matter to DOJ with a recommendation that appropriate proceedings be brought to enforce the rights of the United States under Title IX.

I. **Findings of Fact**

1. MDOE "is an agency of the State of Maine that administers both state education subsidy and state and federal grant programs . . . and leads many collaborative opportunities and partnerships in support of local schools and districts" as stated on its website.

2. Under Maine law, the MDOE is authorized to "[s]upervise, guide and plan for a coordinated system of public education for all citizens of the State"; to "[i]nterrelate public education with other social, economic, physical and governmental activities, programs and services"; and to "[e]ncourage and stimulate public interest in the advancement of education." Me. Rev. Stat. Ann. tit. 20-A, § 201.

3. The MPA is the governing body for youth sports in the state of Maine, and the MPA Division of Interscholastic Activities is responsible for organizing and conducting interscholastic athletic activities for all public and some private high schools throughout Maine.

4. "All public high schools and a number of private schools [in the state of Maine] are MPA members; they currently total 151," as reported on the MPA website.

5. In May 2024, the MPA updated its 2024-2025 Handbook to include a new Gender Identity Participation Policy that permits student athletes to participate in MPA sponsored interscholastic athletics "in accordance with either their birth sex [sic] or in accordance with their gender identity [sic], but not both."

6. Mike Burnham, the executive director of the MPA, stated, "The executive order [President Trump's Executive Order 14201] and our Maine state Human Rights Act are in conflict, and the Maine Principal's Association will continue to follow state law as it pertains to gender identity."

7. The Maine Human Rights Act provides:

   "The opportunity for an individual at an educational institution to participate in all educational, counseling and vocational guidance programs, all apprenticeship and on-the-job training programs and all extracurricular activities without discrimination because of

Case 1:25-cv-00131-JAW   Document 1-13   Filed 04/07/25   Page 3 of 8   PageID #: 79

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

sex, sexual orientation or gender identity, a physical or mental disability, ancestry, national origin, race, color or religion is recognized and declared to be a civil right. It is unlawful educational discrimination in violation of this Act, on the basis of sex, sexual orientation or gender identity . . . to: A. Exclude a person from participation in, deny a person the benefits of, or subject a person to, discrimination in any academic, extracurricular, research, occupational training or other program or activity; B. Deny a person equal opportunity in athletic programs . . . ." Me. Rev. Stat. Ann. tit. 5, § 4602." *See also* Me. Rev. Stat. Ann. tit. 5, § 4601.

8. Greely High School is a public high school in the state of Maine and a member school of Maine School Administrative District #51.

9. On February 17, 2025, it was reported that a male athlete from a public high school in the state of Maine competed in the female event for the 2025 Class B State Meet.

    a. The male athlete competed on Greely's female-only track team.

    b. Greely won the Class B State Meet's indoor track and field events, including in the female-only division.

10. On February 18-19, 2025, it was reported that a male athlete from Maine Coast Waldorf competed in a female-only high school ski event.

    a. On September 30, 2023, the same male athlete competed in the Maine XC Festival of Champions (running) in the female-only division on behalf of Maine Coast Waldorf.

    b. The September 30, 2023 Maine XC Festival of Champions was held at Brewer High School (see meet details), a public high school in the state of Maine, https://www.brewerhs.org/.

11. On February 22, 2025, the United States Department of Agriculture (USDA) initiated a Title IX compliance review of the University of Maine regarding federal funding regarding the participation of male athletes in women's sports.

12. On March 19, 2025, the USDA announced that University of Maine specifically confirmed that they:
    a. Do not permit a male student-athlete to identify as a female student-athlete to establish individual eligibility for NCAA-sanctioned women's sport;
    b. Do not permit a male to participate in individual or team contact sports with females; and
    c. Comply with NCAA regulations and do not permit a male student athlete to participate in NCAA-sanctioned women's sports.

3

Case 1:25-cv-00131-JAW  Document 1-13  Filed 04/07/25  Page 4 of 8  PageID #: 80

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

II. **Funding Jurisdiction**

Based on a review of publicly available data, in 2024 MDOE received funding from the Centers for Disease Control totaling $99,940 and from the Administration for Children and Families totaling $87,015.[1] Greely receives federal financial assistance through MDOE. Finally, OCR exercises jurisdiction over MPA as an entity to which MDOE has ceded control over physical activities, programs, and services, e.g., interscholastic athletic competition, as discussed below.

III. **Analysis**

1. The MDOE receives Federal financial assistance from HHS.

2. As a recipient of HHS Federal financial assistance, MDOE is obligated to comply with Title IX.

3. Under Maine law, Me. Rev. Stat. Ann. tit. 20-A, § 201, the MDOE is authorized to "*[i]nterrelate* public education with other social, economic, ***physical and governmental activities, programs and services***." (emphasis added).

4. MPA is the governing body for youth sports in the state of Maine for primary and secondary education, and its membership includes all public high schools in the state of Maine.

5. MDOE has ceded control of certain "activities, programs, and services," specifically high school interscholastic sports competitions, to MPA, which assumes control of "all interscholastic tournaments, meets or other forms of competition"[2] for its members, including "all public high schools."[3]
    a. Public high schools in Maine such as Greely, which fall under the jurisdiction of the MDOE, compete in MPA sporting events under their school's banner.
        i. For example, as a public high school under MDOE's jurisdiction, Greely won the Class B State Meet's indoor track and field events, entering a male competitor in the female-only division.
    b. Many of the MPA-hosted sporting events, such the 2023 Maine XC Festival of Champions, are held at the facilities of Maine public high schools, which again fall under the jurisdiction of the MDOE.
        i. For example, both the 2023 and 2024 Maine XC Festival of Champions was held at Brewer High School (see meet details here and here), a public high school in the state of Maine, which falls under the jurisdiction of MDOE. As noted above, during the 2023 Maine XC Festival of Champions, a male athlete competed in the female-only division.

---

[1] *See* https://taggs.hhs.gov/Detail/RecipDetail?arg_EntityId=ZyWSnnwwIUZ64ZvdbsJ6hw%3D%3D.
[2] Maine Principals Association Handbook 2024-2025, p. 20
[3] *See* MPA Information - Maine Principal's Association (MPA) (ME)

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

      ii. Likewise, the 2023 Class B State Meet was held at Freeport High School (see meet details), another public high school in the state of Maine, which falls under the jurisdiction of MDOE.

      iii. Indeed, the upcoming 2025 State Championship for track and field in the state of Maine for high school athletes will be held on June 1, 2025 at Mount Desert Island High School, another public high school in the state of Maine, which falls under the jurisdiction of MDOE.

   c. It is therefore no answer for the MDOE to assert, as it did in its March 4, 2025 letter, that "MDOE is not responsible for interscholastic youth sports or athletic programs in the State of Maine. MDOE does not offer, operate, or sponsor interscholastic, intercollegiate, club or intramural athletics in the State of Maine."

   d. MDOE, according to Maine state law, Me. Rev. Stat. Ann. tit. 20-A, § 201, "interrelate[s]" physical "activities, programs, and services," which includes youth sports events. This is further evidenced by the fact that public high schools compete in MPA events *as* their public high school, and the MPA hosts many of their events on public high school facilities.

   e. Ceding that authority to a private organization does not relieve MDOE of its legal obligations to follow federal law.

6. Likewise, while MPA is a private nonprofit organization, its authority to promote, organize, and regulate interscholastic activities in the state of Maine on behalf of MDOE[4] requires it to also comply with Title IX.

7. Indeed, by assuming control over physical "activities, programs, and services" such as interscholastic competition, MPA is subject to Title IX in the same way MDOE would be. *See A.B. v. Haw. State Dep't of Educ.*, 386 F. Supp. 3d 1352, 1357-58 (D. Haw. 2019) (finding high school athletic association had controlling authority over many aspects of the DOE's interscholastic athletic programs and was subject to Title IX, independent of funding source); *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007) ("[I]f we allowed funding recipients to cede control over their programs to indirect funding recipients but did not hold indirect funding recipients liable for Title IX violations, we would allow funding recipients to ... avoid Title IX liability."); *Horner v. Ky. High Sch. Athletic Ass'n,* 43 F.3d 265, 271-72 (6th Cir. 1994) (because Kentucky's state laws conferred authority to the Kentucky State Board of Education and Kentucky High School Athletic Association to control certain activities for the federally funded Kentucky Department of Education, both entities were subject to Title IX); *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 80 F. Supp. 2d 729, 735 (W.D. Mich. 2000) (holding that an athletic association like MPA, which "does not receive any direct assistance from the federal government," and "receives the bulk of its funding from gate receipts generated at MHSAA-sponsored tournaments," was still covered under Title IX, reasoning that "any entity that exercises controlling authority over a federally

---

[4] MPA Information – Maine Principal's Association (MPA) (ME).

5

Case 1:25-cv-00131-JAW   Document 1-13   Filed 04/07/25   Page 6 of 8   PageID #: 82

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

funded program is subject to Title IX, regardless of whether that entity is itself a recipient of federal aid").

8. It is also no answer for MDOE, MPA, and Greely to assert that Maine state law requires MPA's policy. To the extent that it does, however, Federal law preempts conflicting state laws. *See* U.S. Const. art. 6, cl. 2. HHS's Title IX regulations indicate that an obligation under Title IX is not alleviated by any state or local law. 45 C.F.R. § 86.6.

9. In addition, the fact that the University of Maine, Maine's public university system, which is governed by the same state law as MDOE, has interpreted the Maine Human Rights Act such that there is no conflict between federal and state law, undermines MDOE and MPA's position now that Maine law requires MPA's current policy. Stated differently, the Maine Human Rights Act's prohibition on "gender identity" discrimination, as recently interpreted by the University of Maine system, does not compel allowing male athletes (who identify as female) to compete against female athletes in female-only sports.

10. Finally, Greely is a public high school in the state of Maine, which falls under the jurisdiction of the MDOE. As a public high school, Greely is also a member of the MPA and follows MPA's Handbook, including its Gender Identity Participation Policy. On February 17, 2025, Greely fielded a team with a male athlete to compete in the female-only division at the 2025 Class B State Meet for track and field, denying other female athletes an equal opportunity to participate and obtain the benefits of participation in that competition. Greely's team participation, which included a male athlete competing in the female-only division, followed MPA's Gender Identity Participation Policy.

## IV. Efforts to Correct Noncompliance under Title IX

1. On February 21, 2025, OCR initiated an investigation of MDOE's compliance with Title IX.

2. On February 25, 2025, OCR sent MDOE a Notice of Violation, and, on February 27, 2025, a proposed Voluntary Resolution Agreement (VRA). On March 5, 2025, OCR expanded the scope of its Title IX investigation to include MPA and Greely.

3. On March 12, 2025, representatives from OCR, MDOE, MPA, and Greely met, and concluded that MDOE would not sign or provide a counteroffer to the proposed VRA.

4. On March 17, 2025, OCR sent MDOE, MPA, and Greely an Amended Notice of Violation and a revised, proposed Voluntary Resolution Agreement (VRA), which superseded the VRA we provided on February 27, 2025. The Amended Notice of Violation found:

    a. MDOE violates Title IX by denying female student athletes in the state of Maine an equal opportunity to participate, and obtain the benefits of participation, "in any interscholastic, intercollegiate, club or intramural athletics," in current and future athletic events. 45 C.F.R. § 86.41. Male athletes, by comparison, are not subject to heightened safety or competitive concerns, which only affect females.

U.S. Department of Health and Human Services
Office for Civil Rights
Headquarters ● Humphrey Building
200 Independence Ave S.W. ● Washington, D.C. 20201

*See Tennessee v. Cardona*, 737 F. Supp. 3d 510, 561 (E.D. Ky. 2024) ("[I]gnoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities.").

    b. MPA's policy of allowing male athletes to compete against female athletes in high school sports events violates Title IX.

    c. By following MPA's Gender Identity Participation Policy, Greely also violates Title IX by fielding a female-only team with a male athlete.

5. Under 45 C.F.R. § 80.8(d), MDOE, MPA, and Greely had 10 days from the date of the notice of violation to "comply with the regulation and to take such corrective action as may be appropriate." OCR laid out those actions in the VRA. The parties subject to the notice were informed that failure to take corrective action may result in OCR referring the matter to the Department of Justice.

6. Neither MDOE, MPA, nor Greely responded substantively to OCR's findings in its March 17, 2025 Amended Notice of Violation and VRA presented, in either addressing the substance of OCR's factual and legal determinations, or in proposing a resolution of that finding by coming into voluntary compliance.

7. On March 18, 2025, MPA responded that OCR does not have jurisdiction over it because it is not a recipient of federal financial assistance. However, as stated here in the discussion of jurisdiction, and in the March 17th Notice of Violation, OCR asserts jurisdiction over MPA as an entity that has assumed control over the activities of the interscholastic activities of MDOE, a federal funding recipient.

## V. Referral to the United States Department of Justice under 45 C.F.R. § 80.8

45 C.F.R. § 80.8(a) (incorporated through 45 C.F.R. § 86.71) provides:

> If there appears to be a failure or threatened failure to comply with this regulation, and if the noncompliance or threatened noncompliance cannot be corrected by informal means, compliance with this part may be effected by . . . any other means authorized by law. Such other means may include, but are not limited to . . . a reference to the Department of Justice with a recommendation that appropriate proceedings be brought to enforce any rights of the United States under any law of the United States (including other titles of the Act), or any assurance or other contractual undertaking . . . .

Finding that MDOE, MPA, and Greely are nonresponsive to proffered settlement, OCR concludes that compliance with Title IX in this matter cannot be reached through informal means.

Therefore, we formally refer this matter to DOJ with a recommendation that appropriate proceedings be brought to enforce the rights of the United States under Title IX.

If you have questions, you may contact Daniel Shieh, Associate Deputy Director, at Daniel.Shieh@hhs.gov. When contacting this office, please remember to include the transaction number, referenced above, that we have given this file.

Sincerely,

Anthony F. Archeval
Acting Director
HHS, Office for Civil Rights